Donald R. RUSSELL, Petitioner,

v.

R. M. OLIVER et al., Respondents.

Civ. A. No. 74-C-114-H.

United States District Court, W. D. Virginia, Harrisonburg Division.

Jan. 21, 1975.

James W. Hopper, Asst. Atty. Gen., Richmond, Va., for respondents.

## OPINION and JUDGMENT

DALTON, District Judge.

Donald R. Russell, an inmate in the Virginia Correctional System has filed suit against several officials within the Department of Corrections alleging several grounds for relief under 42 U.S.C. § 1983. Jurisdiction vests in this court pursuant to 28 U.S.C. § 1343. Plaintiff seeks injunctive and monetary relief, immediate release from custody,[1] "and for such other relief as to this court seems just, proper and equitable."

The plaintiff's first contention is that the officials of Unit #10 have failed to make available a list of the unit's rules and regulations and the minimum and maximum punishments prescribed for each violation. He further states that there is no access to "a complete and accurate copy of Department of Correction Guidelines pertaining to Unit Classification Committee Action." The defendant Superintendent of Unit #10 has filed an affidavit stating that a list of the unit's rules and regulations and the prescribed punishments for violations is posted in the lower level activities room of Unit #10 and that additional copies are available in his office and the office of the unit counselor for inspection at any time by a member of the inmate population. He further states that copies of Department of Corrections Guidelines are also available from these offices. Affidavit of W. R. Loving, Superintendent of Augusta Correctional Unit #10. In rebuttal, plaintiff has filed with this court affidavits from several inmates at Unit #10 stating that copies of unit rules and regulations have not been posted in the past and are not presently posted.

Failure to post these rules is not *per se* a constitutional deprivation even if such failure violates department guidelines. Therefore, even if this court were to find that the rules and regulations were not in fact posted, no constitutional claim cognizable under § 1983 is stated absent a showing by the plaintiff that he has been prejudiced as a result. Plaintiff does not allege that he has suffered any injury of constitutional dimension because of the failure to post the unit's rules; and this claim must therefore be dismissed. Out of a sense of fairness to the inmates and in order to avoid simple misunderstandings that result in needless litigation in this court, the court would advise, however, that Department of Corrections officials review their procedures for bringing to the inmates' attention the rules and regulations governing the conduct of inmates and the unit's disciplinary committees.

Plaintiff's second ground for relief is that the superintendent has hindered access to the courts by failing to provide legal paper and legal books or materials. Under this allegation must also be considered plaintiff's allegation, supported by an affidavit of a fellow inmate, that Defendant DeCuir told him that he would receive no help or benefits at the unit until he ceased filing complaints in this court.

Although there are no law books at the unit, a supply of legal paper, complaint forms, and envelopes are available for the inmates. Affidavit of W. R. Loving, Superintendent of Unit #10. Although these supplies have been exhausted at times, such shortages have not lasted for more than a short time, *ibid*; plaintiff concedes that supplies are generally available. These occasional shortages do not so burden plaintiff's

---

1. Since plaintiff is in no way challenging his conviction, the remedy of release from custody would in no event be appropriate.

right of access to the courts as to present a constitutional claim, and this claim must therefore be dismissed.

A more difficult question is presented by plaintiff's lack of access to law books. It is a settled law that a prisoner's right of access to the courts enjoys constitutional protection, *see* Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); and cannot be subjected to unreasonable restrictions. Although some courts have held that under certain circumstances an inmate's right of access to the courts may impose an affirmative duty upon the state to provide access to legal materials, *see, e. g.,* Hooks v. Wainwright, 352 F. Supp. 163, 166 (M.D.Fla.1972) (*de facto* restriction on the right to access to courts created by lack of access to legal materials so burdens that right as to violate equal protection and due process); these holdings are but specific applications of the general principle that the state need only provide some reasonable and effective opportunity for a prisoner to gain equal access to the courts. Noorlander v. Ciccone, 489 F.2d 642 (8th Cir. 1973); Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970) (three-judge court), aff'd per curiam sub nom., Younger v. Gilmore, 404 U.S. 15, 92 S. Ct. 250, 30 L.Ed.2d 142 (1971). Only by a showing that the opportunity to secure postconviction relief afforded by the state is ineffective in the absence of adequate law library facilities would the constitutional imperative of Johnson v. Avery, *supra* be violated. There is no such showing in this case. Prisoners are free to file complaints in this court as evidenced by the large volume of prisoners' complaints received each year. Such *pro se* complaints are reviewed by this court and counsel is appointed whenever a material issue of fact exists. Furthermore, the state has instituted a program under which a court of record shall appoint attorneys to counsel and assist indigent inmates regarding any legal matter relating to their incarceration. Va.Code Anno., § 53–21.2 (1974 Supp.) Therefore, having considered the totality of the circumstances governing plaintiff's position *vis à vis* the court system, this court is of the opinion that his right of access to the courts is not unconstitutionally restricted and therefore dismisses this claim.

Plaintiff alleges that he has been threatened with future retaliatory actions by Defendant DeCuir for invoking the judicial process. This court cannot emphasize too strongly that it takes an extremely dim view of any conduct on the part of prison officials directed against inmates in retaliation for their filing complaints. However, isolated threats of retaliation cannot invoke judicial relief and such relief will be withheld until such time that an inmate suffers retaliatory action in fact by prison officials or that threatened harm is imminent. Since the plaintiff does not contend that he has yet suffered any retaliatory action or that such action is imminent, this claim must be dismissed.

Plaintiff further states that his access to the courts is restricted because of mail tampering by the defendant officials of Unit #10. In support of this contention, plaintiff states that he did not receive a letter dated September 10, 1974 from his attorney until November 20, 1974. The defendants state that they have not acted to withhold mail addressed to the plaintiff or by the plaintiff. This court will accept the representations of the defendants and dismiss this claim. The court, however, must also accept as true plaintiff's representation that certain mail was not received until over a month after its mailing. Absent special circumstances, an inmate has a constitutionally protected interest of uncensored communications with his attorney. Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L. Ed.2d 224 (1974). This court will therefore not lightly dismiss claims that allege interference with an inmate's mail. This court would accordingly advise unit officials to investigate this charge for evidence of any improprieties by employees or inmates of the unit; further complaints of this kind will con-

strain this court to order evidentiary hearings.

Plaintiff also contends as a ground for relief that the unit officials should keep a log of incoming legal mail. This claim is clearly without merit. No constitutional right is infringed by failure to keep such a log. These types of internal administrative procedures are within the realm of administrative detail and will not be reviewed by a federal court without a showing that such procedures infringe upon a constitutional right.

Plaintiff's next claim challenges his permanent transfer from Unit #8 to Unit #10. It appears from the record that on June 10, 1974 the plaintiff was temporarily transferred from Unit #8 to Unit #10, with plaintiff's consent, because of plaintiff's involvement in a cutting incident at Unit #8. On August 10, 1974, the Institutional Classification Committee (ICC) at Unit #10 considered plaintiff's request to return to Unit 8. The ICC recommended plaintiff transfer so to participate in a psychotherapy program. The Central Classification Committee disapproved this recommendation because of plaintiff's involvement in a felonious assault while at Unit #8 and because plaintiff, due to an earlier ICC determination, was ineligible to participate in either work release or study release until May 3, 1975. Affidavit of E. P. Rice, Jr., Chairman of the Central Classification Board. This court finds that such action was not arbitrary and did not deprive plaintiff of any constitutional right.

Plaintiff further points to the action of the Central Classification Board which changed the length of his exclusion from work release from 6 months to 12 months. The ICC, after a hearing that plaintiff concedes comported with due process safeguards, imposed a six month exclusion period in apparent ignorance of the guideline prescribing a minimum exclusion period of 12 months. The action of the Board was taken so to conform with Department of Correction Guidelines. There was nothing improper in this action by the Board and this claim is dismissed.

Plaintiff's next ground for release asserts that the defendant officials at Unit #10 denied plaintiff "access or admission to any of the available rehabilitative programs within the Department of Corrections of the Commonwealth of Virginia." In explanation of the contention, plaintiff asserts that:

"He entered his period of incarceration with a skilled profession; due to the technological changes which have taken place since his incarceration began, plaintiff is no longer proficient in his skills. All attempts to secure educational materials have met with no success, and the plaintiff is presently less fit to gainfully earn a living than the day he entered the Correctional System. While plaintiff acknowledges no constitutional right to rehabilitative vocational training, the defendants denial of educational materials have the effect of destroying existing vocational skills; therefore the plaintiff is less equipped to earn a living than he was upon his incarceration. The plaintiff contends that the destruction of existing skills constitute cruel and unusual punishment; the action of the defendants is damaging to him; all of which damages amount to, on the part of each individual defendant, the sum of ten thousand dollars ($10,000)."

Plaintiff has been excluded from the work-release program because of a rules infraction. Furthermore, it is the opinion of this court that no federal constitutional right to vocational training exists for inmates in a correctional system and the state has no obligation to provide the plaintiff with vocational materials.

Plaintiff also alleges denial of a furlough as a ground for relief. Nevertheless, it appears that plaintiff desired a furlough to visit a person not of his immediate family. Department of

Corrections Guideline No. 813 prescribes that an inmate may be given a furlough only to visit his immediate family. Although the ICC recommended approval of his application for furlough, Defendant Loving denied his application based on Guideline 813, a decision affirmed by the furlough review committee. There appears nothing punitive nor arbitrary in the denial of plaintiff's furlough application and this claim must accordingly be dismissed. Brooks v. Dunn, 376 F.Supp. 976 (W.D.Va.1974).

As part of this grievance concerning his denial of a furlough, plaintiff states that "the Department of Corrections Furlough Program has instituted procedures that require those persons who are non-Virginia residents of record to meet criteria not required of those persons who are Virginia residents of record." Plaintiff presumably is referring to the *de facto* effect of Guideline 813. Guideline 813, however, represents a reasonable accommodation between the interests of the inmates and the needs of the institution, *cf.* Wolf v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and does not offend any constitutional prescription.

 Plaintiff's final assertion that he has been denied visitation privileges is also without merit. It appears that the Superintendent of Unit #10 has refused permission to plaintiff to receive a certain visitor on weekdays. Plaintiff claims that this particular visitor is unable to visit on weekends as unit regulations require. Although the Superintendent acknowledges that special arrangements are made for those persons who are unable to visit on weekends, the defendant Superintendent states, however, that he informed plaintiff's visitor of the regulation against weekday visitors and was not informed by him of his inability to visit on weekends. Affidavit of W. R. Loving, *supra*. Therefore, even assuming that plaintiff's contention would state a claim, the facts do not support it and it must be dismissed.

For the above reasons, this case is dismissed. The plaintiff is advised that he may appeal this decision to the United States Court of Appeals for the Fourth Circuit by filing with this court a notice of appeal within 30 days from the date of this judgment.

The clerk is directed to send a certified copy of this opinion and judgment to the plaintiff and counsel of record.